J-A19025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE RELINQUISHMENT OF: N.B.C.A., A MINOR | : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.A., FATHER | : | No. 353 MDA 2022 |

Appeal from the Decree Entered January 24, 2022
In the Court of Common Pleas of Lackawanna Count
Orphans' Court at No(s): 2021-00045

| | | |
|---|---|---|
| IN RE RELINQUISHMENT OF: J.R.A., A MINOR | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.A., FATHER | : | No. 354 MDA 2022 |

Appeal from the Decree Entered January 24, 2022
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No(s): 2021-00046

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED: OCTOBER 25, 2022**

Appellant, M.A. ("Father"), appeals from the decree entered in the

Lackawanna County Court of Common Pleas, Orphans' Court, which granted

the petition of Lackawanna County Children and Youth Service ("CYS") for the

_____

[*] Former Justice specially assigned to the Superior Court.

involuntary termination of Father's parental rights to his minor children,

N.B.C.A. and J.R.A. ("Children"). We affirm.

The Orphans' Court set forth the relevant facts and procedural history

of this case as follows:

On September 23, 2021, [CYS] filed its petitions for involuntary termination of parental rights as to [Children] against [M.B. ("Mother")] and [Father]. The petitions identically indicate that [CYS] placed [Children with A.M.M. and G.C. ("Maternal Grandparents")] on March 25, 2020 and that [the Orphans' Court] adjudicated them dependent on April 6, 2020. The court scheduled a hearing relative to said petitions for December 6, 2021 but granted a continuance sought by [Father's] counsel, and the matter ultimately proceeded on January 24, 2022. Mother voluntarily relinquished her parental rights with respect to both children on or about December 13, 2021.

At the time of the termination hearing, [CYS] caseworker Jennifer Dunston testified. She indicated that [N.B.C.A.] initially presented with a bite mark on his face, later determined to be from [J.R.A.] but sustained while in Mother's care. Additional allegations leading to [Children]'s dependency in March of 2020 included that they had not seen [Father] in eight months; that Mother demonstrated a history of mental illness; and that they were not attending school. Moreover, [Children]'s medical needs had been neglected for at least one year.

Caseworker Dunston elaborated that prior to initiation of the instant dependency action, Mother and Father had a turbulent relationship due to domestic violence and had been separated. At the time of [Children]'s placement, [Father] had been living with a friend in Luzerne County and did not have a bedroom for [Children]. Also, significantly, he tested positive for alcohol at the time of his first [CYS] screen on March 27, 2020.

Once [CYS] became involved, despite his stated intentions to obtain suitable housing, and re-establish a relationship with [Children], [Father] failed to make any meaningful

progress toward acquiring custody of [Children]. Specifically, he did not comply with his obligations under the Family Services Plan implemented by [CYS], discussed with and verbally agreed to by [Father], and adopted by the court on April 14, 2020. [Father] "never attended any medical appointments for [Children]," and "never requested any of that information from [the caseworker or] from [Maternal] [G]randparents," with whom children were placed. He did not address his drug and alcohol issues as required. Though he should have completed a total of 93 weekly screens during the pendency of this case, he submitted to only 18, 14 of which were positive. Moreover, although he completed a drug and alcohol evaluation in January of 2021, he did not follow the resulting recommendation that he attend programming twice a week, later increased to four times a week following concerning levels of alcohol use detected, and he was unsuccessfully discharged from services. He did not follow through on finding appropriate housing for himself and [Children]. He continued living in his friend's unsuitable residence until the summer of 2021, at which time he relocated to a one-bedroom apartment that, as of October 2021, remained unfurnished, except for a couch in the living room where he slept. He consistently used work as an excuse for his non-compliance, but he remained uncooperative when [CYS] and service providers involved made attempts to work around his schedule, and he failed to provide documentation to support his unavailability. Thus, though confident he would be able to care for and support [Children] himself, throughout the pendency of this case, [Father] never achieved a compliance rating above "minimal."

Although [Father] initially elected not to engage in visitation with [Children] due to Covid-19, even when Zoom visits were offered, once visits commenced in September 2020, they were consistent. From September 2020 to June 2021, the visits occurred twice a month at [CYS] and "always went well." Upon [Father]'s request, visitation progressed to occur within the community in June 2021, and [Father] would take [Children] out to eat, then take them to buy a toy before returning them. Caseworker Dunston explained that while [Children] look forward to visiting with [Father] and enjoy it, they do not view him as a parent but more as a friend. Additionally, due to [Father]'s living arrangements

throughout the duration of [CYS] involvement, [Children] have never had overnight visitation with him.

Since the time of their placement, for a duration of 22 months at the time of the termination hearing, [Children] have resided with Maternal Grandparents in Old Forge, Pennsylvania and are thriving. [N.B.C.A.] exhibits no concerning behavior, and [J.R.A.] attends therapy to address the issues leading to her placement and achieves good grades in school. [J.R.A.] has repeatedly indicated to the caseworker that she wants to remain in Maternal Grandparents' home and does not wish to reside with either parent. [Children] do not "talk about [Father] in a nurturing way in that they look to [him] to meet their needs." Maternal Grandmother assists [J.R.A.] with homework, she helps [Children] when they are sick; if they are hungry, if they need anything, [Children] look to Maternal Grandparents. They are well bonded, [Children] feel secure, and their medical and dental needs are met. Moreover, Maternal Grandparents have indicated not only their willingness to adopt [Children] but to continue to encourage and maintain a relationship between [Children] and [Father].

(Orphans' Court Opinion, filed March 28, 2021, at 2-5) (internal citations omitted).

Father testified that he is employed at Lowes Distribution Warehouse and would be able to provide for all of Children's needs if they were in his care. Father indicated that he is up to date on his child support payments and is consistent in visiting Children. Father takes Children to the mall or the park when the weather is nice and buys them toys and clothes. Father admitted that his current apartment only has one bedroom but stated that it is difficult for him to find apartments because of his bad credit. Father does not believe that he has a problem with alcohol abuse and only went to rehab previously

because it was a bad period in his life. Father also stated that he stopped going to screenings because he started receiving bills.

At the conclusion of the termination hearing, the Orphans' Court terminated Father's parental rights to Children on January 24, 2022. On February 24, 2022, Father timely filed separate notices of appeal and contemporaneous concise statements pursuant to Pa.R.A.P. 1925(a)(2)(i) for the underlying docket number concerning each child. This Court subsequently consolidated the appeals *sua sponte*.

Father raises the following issue for our review:

> Whether the court erred in finding that [CYS] proved the elements of 23 Pa.C.S.A. § 2511(a)(2), (5) and (8), and 23 Pa.C.S.A. [S]ection 2511(b) through clear and convincing evidence?

(Father's Brief at 4).

On appeal, Father contends the court failed to properly consider the progress and steps Father took toward addressing the issues identified by CYS. Specifically, Father argues that his level of participation in court ordered services was reasonable in light of his extensive work schedule and the COVID-19 pandemic. Father asserts that he "has in no way shown a refusal to remedy any incapacity in his parenting, and since the filing of this termination [petition], [Father] has regularly visited with [Children], spent quality time with them, and paid child support." (*Id.* at 10-11). Father claims that CYS failed to present any current concerns with Father's ability to parent and failed to establish that termination would best serve the needs and welfare

- 5 -

of Children. Additionally, Father asserts that there is a strong bond between him and Children and severing that bond would be detrimental for Children. Father concludes the court erred in finding that CYS presented clear and convincing evidence that termination was in Children's best interests, and this Court should vacate the termination decree. We disagree.

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super.

2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

CYF filed a petition for the involuntary termination of Father's parental rights to Child on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement

- 7 -

with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

>Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of …his parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re Z.P., supra* at 1117. "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 1117-18. Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and

welfare of the child." *In re Z.P., supra* at 1118.

Regarding the six-month period prior to filing the termination petition:

[T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of …his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of CYS supplied over a realistic time. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement

or the availability or efficacy of CYS services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his … rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties.

- 11 -

Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [himself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of …his ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with …his physical and emotional needs.

*In re B., N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his… child is converted, upon the failure to fulfill his… parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

Instantly, the court found that CYF provided clear and convincing evidence to establish grounds for termination pursuant to Section 2511(a)(2),

(5) and (8). In support of termination pursuant to Section 2511(a)(2), the court found:

> (1) [Father] had no contact with [Children] for a period of at least eight months prior to the circumstances leading to their dependency, and, even once re-engaged with [Children], over the course of 22 months, he continuously demonstrated an incapacity or refusal to care for [Children] by prioritizing work and alcohol over services and finding appropriate housing; (2) [Father]'s refusal or incapacity caused [Children] to be without essential parental care, control or subsistence necessary for their well-being; and (3) the causes [of Father]'s failings cannot or will not be remedied as evidenced by his history of noncompliance with [CYS], almost non-existent engagement in services recommended, refusal to screen, and failure to obtain appropriate housing.

(Orphans' Court Opinion at 7).

The record supports the court's findings. Ms. Dunston testified that Father did not comply with his Family Services Plan despite her efforts to work with his schedule and accommodate his needs. Specifically, Father did not follow through with the recommendations of his drug and alcohol evaluation or participate in the majority of the screenings he was asked to do despite offers to plan around his work schedule in locations that were convenient for him. Of the 18 screenings he submitted to, 14 of them were positive for alcohol use. Ms. Dunston further noted that Father has not had any overnight visitation with Children because Father has not acquired appropriate housing to accommodate Children. As such, the court was within its discretion to conclude that Father failed to make adequate progress in a reasonable time frame and is unable or unwilling to remedy the conditions that necessitated

- 13 -

Children's removal. *See In Interest of Lilley, supra*. Accordingly, we see no error in the court's determination that termination was proper under Section 2511(a)(2). *See In re Z.P., supra*.

Further, as of the date the termination petition was filed, Children had been in Maternal Grandparents' care for 18 months, which is well beyond the six and twelve-month thresholds set forth in Sections 2511(a)(5) and (8), respectively. During that time period, Father did not progress to having overnight visitation with Children because he did not have appropriate housing. Father only acquired independent housing in the summer of 2021. Even then, Father's one-bedroom, unfurnished apartment was not appropriate to accommodate Children's needs. Additionally, Father has not addressed his issues with alcohol and his compliance and progress ratings have consistently been minimal throughout the pendency of Children's adjudication. Therefore, we discern no error in the court's determination that termination was proper under Sections 2511(a)(5) and (a)(8).[1] *See In re B., N.M., supra*; *In re A.R., supra*.

With respect to Section 2511(b), the court acknowledged that there is a positive and loving relationship between Father and Children. However, Ms. Dunston testified that although Children enjoy their time with Father, they do

_____

[1] We recognize that termination would have been proper under Section 2511(a)(2), (a)(5), or (a)(8), without any discussion of the remaining subsection (a) prongs, along with consideration of the subsection 2511(b) provisions. *See In re Z.P., supra*.

not look to him as a parental figure. They do not speak about Father in a nurturing way or look to him to meet their needs. Rather, they are bonded to Maternal Grandparents in this manner. Specifically, Children turn to Maternal Grandparents when they are hungry, sick, or need help with homework and other things. Further, Children are doing well in Maternal Grandparents' care. Children are getting good grades in school and are up to date on their medical and dental appointments. N.B.C.A. exhibits no concerning behaviors and J.R.A. regularly attends therapy to help her process the circumstances surrounding her placement. Additionally, J.R.A. relayed to Ms. Dunston that she would like to remain in Maternal Grandparents' home. Therefore, we discern no error in the court's determination that termination is in Children's best interest under Section 2511(b). *See In re Adoption of C.D.R.*, 111 A.3d 1212 (Pa.Super. 2015) (affirming termination decision where court acknowledged that Mother and Child were bonded, but reasoned that termination would not be detrimental to Child and would serve Child's best interest and allow Child to find permanency with another family); *In re N.A.M.*, 33 A.3d 95 (Pa.Super. 2011) (explaining mere existence of emotional bond does not preclude termination of parental rights). Accordingly, we affirm the termination decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/25/2022